## McLane v. Hancock et al.

(Decided   Oct.   11,   1938.)

GEORGE VEITH and WEBSTER HELM for appellant.

ARTHUR C. HALL for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The only question in the case is whether an attaching creditor had actual notice of a previous unrecorded deed to the property levied upon.

The appellant, James L. McLane, doing business as James L. McLane and Sons, sued Reynolds Hancock for a balance due on account. On December 10, 1932, an attachment was levied upon two adjoining city lots as being the defendant's property. The appellee, C. E. Johns, intervened and claimed title to one of the lots by a conveyance from Hancock on March 10, 1932. He pleaded that McLane had actual notice of the conveyance. The chancellor adjudged McLane had such notice, hence that the attachment on the lot was ineffective.

It appears that Hancock had been engaged in the business of building and selling houses in Bellevue and became financially involved in the early part of 1932. He conveyed one piece of property to the Weingartner Lumber Company in satisfaction of his debt to it. On March 10, 1932, he executed and delivered a deed to the lot involved to Johns in satisfaction of his account for fire insurance premiums and commissions on the sale of real estate of about $1,000. This was regarded as the approximate value of the lot. It and the adjoining lot had cost Hancock $3,600. That such a deed was made and delivered at the time is not questioned. It was not recorded for the reason that Johns promised Hancock if he could raise the money to pay the account he would surrender the deed and cancel the conveyance. At this time Hancock was indebted to the appellant for plumbing supplies and labor.

Johns testified that McLane came to his office frequently. He told him Hancock had agreed to convey the lot to him in payment of his account, and had said that

he would convey the other one to McLane for what he owed him. After the deed was made he told McLane that he had been satisfied, and on one occasion showed him his deed. At one time McLane said it was his purpose to accept the other lot. It appears that McLane did not know Hancock's whereabouts and was trying to keep up with him through Johns. Before the suit was brought, Johns testified, he had a conversation with Mr. Veith, McLane's attorney, and told him he had such a deed. Johns appeared before the city council in connection with the notice regarding the construction of a pavement in front of the property, which had been served on Hancock, and informed that body that he and not Hancock owned the lot. He secured permission to and did put down a cinder walk as it was his purpose to build a house on the lot and he was afraid a concrete pavement would be injured during the construction.

Hancock testified to the giving of the deed as related by Johns. He had several conversations with McLane; told him about his deeds to the lumber company and to Johns; and offered to convey the other lot to him as it was all that he had left with which to pay his debts. At one time McLane agreed to accept the other lot and there was a meeting in the office of his attorney where the matter was talked over. The appellee's brother, W. L. Johns, was present. A sketch was there made of the lots and the one to be conveyed to McLane was indicated. He agreed to bring in his old deed and to get Johns' deed and submit to the attorney for the preparation of the deed to McLane. When he called on the telephone a few days later to say he had the deeds, Mr. Veith told him there was no use of bringing them as suit had been filed. Before all this occurred, Hancock testified, he had a talk with McLane one day at St. Johns church, in which he told him of the Johns' deed. It was there that McLane agreed to accept the other one. In several conversations he had advised McLane that he ought to take the other lot in satisfaction of his debt. It appears that Hancock went into bankruptcy in October, 1933, and listed this Johns' lot among his assets, but just how it was listed is not shown in the evidence. Hancock explained that he put it in on advice of his attorney because the court had not determined the question in this law suit at that time. W. L. Johns fully corroborated Hancock as to what occurred at the

808

lawyer's office regarding the proposed conveyance to McLane and the disclosure and discussion relative to Johns' conveyance. On different occasions McLane had talked with him about the Hancock debt and the conveyance to Johns was known to McLane. Louis E. Moore, of the Weingartner Lumber Company, testified to similar conversations with McLane about taking the remaining lot. In these talks mention was made of the Johns transaction.

On the other side, McLane testified that he heard and knew nothing at all about the Johns deed until a week or so after this suit was filed. He admitted having been in Johns' office a number of times—"sometimes once and sometimes twice a week"—looking for Hancock, but stated nothing was ever said about Johns having taken over the lot in controversy. One time Hancock did offer him a lot in settlement but he did not accept it as he wanted both of them. He never had any conversation with W. L. Johns or Hancock in his attorney's office until after the suit was brought. However, on cross-examination he stated the conversations were "probably" before then. There Veith asked about the old deed to look up a record or something but not for the purpose of preparing a deed to him. McLane specifically contradicted Moore also. Mr. Veith denied knowledge of the previous deed, and stated the conversation in his office occurred after the suit was filed.

We think the chancellor was fully justified in holding that McLane had actual notice of the deed to Johns and that his attachment on the lot was of no effect.

The judgment is affirmed.